IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 1:07 CR 69 |
| | ) | |
| vs. | ) | BILL OF INDICTMENT |
| | ) | |
| 1) HENDERSON AMUSEMENT, INC. | ) | Violations: |
| 2) JAMES OTIS HENDERSON, | ) | 18 U.S.C. § 371 |
|     also known as Jamie Henderson | ) | 18 U.S.C. § 666(a)(2) |
| 3) BARRON SLOAN HENDERSON, | ) | 18 U.S.C. § 1503 |
|     also known as Barry Henderson | ) | 18 U.S.C. § 1512(b)(1) |
| 4) JERRY PENNINGTON, | ) | 18 U.S.C. § 1512(k) |
|     also known as J.P. | ) | 18 U.S.C. § 1623 |
| 5) JEFFREY LEE CHILDERS | ) | 18 U.S.C. § 1955 |
| 6) HAROLD STEVE HARTNESS | ) | 18 U.S.C. § 1956(h) |
| 7) WILLIAM W. BROWN, | ) | 18 U.S.C. § 2 |
|     also known as Hack Brown | ) | |
| 8) KATHY STEPHEN | ) | |
| 9) MARTY MARVIN BABB | ) | |
| 10) MICHAEL RAY ELLIOTT | ) | |
| 11) RANDALL W. GILES | ) | |
| 12) ROGER BEDENBAUGH | ) | |
| 13) IMRAN ALAM | ) | |
| 14) DENNIS CLARY, | ) | |
|     also known as Hooper Clary | ) | |
| 15) TIMOTHY SHANNON BUFF | ) | |
| 16) GUY KENNETH PENLAND | ) | |
| 17) RONNIE EUGENE DAVIS, | ) | |
|     also known as Butch Davis | ) | |
| 18) DEXTER WAYNE WINFIELD, JR. | ) | |
| 19) BILLY RAY BUCHANAN | ) | |
| 20) TERRI HOLTSCLAW | ) | |
| 21) ROBERT MERRYMAN | ) | |
| 22) PAMELA BUESSER | ) | |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## Introduction

1. Beginning by October 1, 2000, and continuing through the present, HENDERSON AMUSEMENT, INC., its owners, employees, and other persons operating with HENDERSON AMUSEMENT, INC., conspired to conduct a large and lucrative illegal gambling business in the Western District of North Carolina by making cash payouts on hundreds of video poker machines in violation of the laws of the State of North Carolina. During the course of this conspiracy they took in more than $5,000,000 in proceeds. To facilitate this illegal gambling business, they paid law enforcement officers to obtain the officers' assistance in operating the business and to interfere with law enforcement activities. Aware that they were being investigated by federal and state law enforcement agents and by a federal Grand Jury, they endeavored to obstruct the investigation by hiding evidence, committing perjury before the Grand Jury, and attempting to suborn false Grand Jury testimony.

### *North Carolina's Laws Regulating Video Poker Machines*

2. Concerned that there would be a large influx of video poker machines into North Carolina after the State of South Carolina banned such machines in 2000, the North Carolina General Assembly enacted laws, effective October 1, 2000, that banned any video gaming machines, including video poker machines, that were not already in operation in North Carolina by June 30, 2000. N.C.G.S. 14-306.1(a).

3. The 2000 law made it a criminal offense to make any cash payouts whatsoever, regardless of amount, based on the operation of a video gaming machines (sometimes referred to hereafter as simply the "machine" or "machines"). The greatest prize that could legally be won was a coupon that could be exchanged for prizes or merchandise with a value not exceeding $10.00. N.C.G.S. 14-306(b)(2).

4. Every video gaming machine had to be registered with the sheriff of the county where the machine owner wished to place it in operation, and each lawfully registered machine had to bear an official registration sticker provided by the sheriff. N.C.G.S. 14-306.1(i). The state law also prohibited the warehousing of video gaming machines. N.C.G.S. 14-306.1(m).

### *Henderson Amusement, Inc.*

5. HENDERSON AMUSEMENT, INC., is a South Carolina corporation owned by brothers JAMES OTIS HENDERSON, also known as Jamie Henderson, and BARRON SLOAN HENDERSON, also known as Barry Henderson. HENDERSON AMUSEMENT, INC., has its main offices in Inman, South Carolina, and Spartanburg, South Carolina. HENDERSON AMUSEMENT, INC., also owned a facility with offices, storage and warehouse space in the Western District of North Carolina at 134 Banks Road, Kings Mountain, in Cleveland County.

2

6. HENDERSON AMUSEMENT, INC., JAMES HENDERSON, and BARRON HENDERSON (hereinafter sometimes referred to as "the HENDERSONS") operated video poker machines in the Western District of North Carolina beginning by October 1, 2000, and continuing at least through March 2007.

7. Certain HENDERSON employees were responsible for finding new locations at which to place the machines. These employees included JERRY PENNINGTON, also known as J.P., GUY KENNETH PENLAND, MARTY MARVIN BABB, and RANDALL W. GILES. They also negotiated with the owner of the location (hereinafter the "store owner") to establish what percentage of the net profits the HENDERSONS and the store owner would each receive.

8. Store owners and store clerks who operated, and who made cash payouts on, HENDERSON AMUSEMENT, INC., video poker machines in the Western District of North Carolina during the time material to this Indictment include: JEFFREY LEE CHILDERS, IMRAN ALAM, DENNIS CLARY, also known as Hooper Clary, TIMOTHY SHANNON BUFF, DEXTER WAYNE WINFIELD, JR., BILLY RAY BUCHANAN, TERRI HOLTSCLAW, ROBERT MERRYMAN, and PAMELA BUESSER.

9. Occasionally a player would win a jackpot, which could be thousands of dollars. If the jackpot was more than the store owner had on hand to pay out, the store owner could call a HENDERSON employee to ask him to deliver enough cash to pay it. This advance or loan was called "the bank" and the HENDERSONS would keep careful records of these cash deliveries to ensure that the store owner repaid them.

10. A HENDERSON employee would regularly visit the stores to check the machines and to collect the HENDERSONS' share of the profits. This was called a "checkup." The employee would usually take readings from the machines, and print out a slip of paper showing the amount of cash that had been taken in and paid out since the last previous reading. He would also complete a form that listed the readings for each machine (the checkup ticket), total the cash in and cash out for all the machines for the checkup period, and calculate the net profit to be divided between the merchant and the HENDERSONS.

11. The HENDERSON checkup employee then bundled the checkup ticket with the printout slip and the cash obtained from that location. The checkup employee would thereafter go to another store and perform the entire process again. The employee would eventually return to the HENDERSON facility in either Inman or Kings Mountain to drop off these bundles.

12. The checkup employees during the period relevant to this Indictment include: WILLIAM W. BROWN, and KATHY STEPHEN, who returned their cash-and-checkup-ticket bundles to the Kings Mountain facility; and MARTY MARVIN BABB, MICHAEL RAY ELLIOTT, RANDALL W. GILES, and ROGER BEDENBAUGH, who delivered their bundles to the offices in Inman.

3

13. Another HENDERSON employee would deposit the cash into an account at Regions Bank in Spartanburg. The HENDERSONS then used the funds in the Regions Bank account, which were derived from and were the proceeds of an illegal gambling business, to engage in financial transactions with the intent to promote the carrying on of the illegal gambling business. In addition, the HENDERSONS used these funds in the Regions Bank account to engage in monetary transactions of a value greater than $10,000.

## *The Search Warrant at the Kings Mountain Facility*

14. On or about May 17, 2005, law enforcement agents from the Cleveland County Sheriff's Office and the Federal Bureau of Investigation executed a search warrant at the HENDERSONS' office and warehouse facility at 134 Banks Road, Kings Mountain, North Carolina. Knowing a search warrant was about to be executed, HENDERSON employee WILLIAM BROWN hid cash and documents in various locations within the facility. The agents discovered the hidden cash and documents.

15. On that same day, before the law enforcement officers began to execute the search warrant, a person identified as W.R.D., the longtime attorney for the HENDERSONS, arrived with another person known to the Grand Jury and entered the building. This attorney (now deceased) obtained from BROWN a stack of documents and a computer disc. The attorney and BROWN agreed that the attorney would attempt to take these items away from the facility without letting the agents search them. This scheme succeeded.

16. During the search, the agents recovered a large quantity of computer information and business records, as well as approximately $165,000 in cash.

17. The warehouse contained video poker machine components, including video monitors, printers, cash acceptors, and the computer motherboards that control the machines, as well as official North Carolina video poker machine registration stickers, not affixed to any machine. The agents also seized six complete video poker machines in working order and 27 additional machines and machine cabinets that were missing one or more components. Many of the seized machines had no registration sticker or manufacturer's serial number affixed to them. At least two of the seized machines had forged manufacturer's serial number stickers affixed to them.

## *Searches and Seizures in Rutherford County*

18. On or about June 13, 2006, officers of the Rutherford County Sheriff's Office conducted a search at Childers Truck Stop in Forest City. JEFFREY LEE CHILDERS was a co-owner of that truck stop. The officers seized eight video poker machines belonging to HENDERSON AMUSEMENT, INC. These machines were not lawfully registered at that location, and it was illegal under state law to have more than three machines in operation at a single location.

4

19. On or about February 5, 2007, law enforcement agents executed a search warrant at a HENDERSON AMUSEMENT, INC., building at 480 South Main Street, Rutherfordton, North Carolina. Agents located more than 50 video gaming machines, including video poker machines and video blackjack machines. Many of the machines were missing one or more components, but at least five were fully operable. No video gaming machines were lawfully registered to that address. It was a violation of North Carolina law to warehouse video gaming machines.

20. On or about July 31, 2007, law enforcement agents executed two search warrants on Airline Drive, in Forest City, North Carolina, and seized four HENDERSON video poker machines. Rutherford County Sheriff's deputies executed three search warrants at three other locations in Rutherford County that day, and seized 19 HENDERSON machines. None of these 23 machines had been lawfully registered.

### Bribery of a Law Enforcement Officer

21. In order to facilitate their illegal gambling business in Rutherford County, North Carolina, JAMES HENDERSON and JEFFREY LEE CHILDERS entered into a scheme to pay bribes to a law enforcement officer who was an agent of Rutherford County and the State of North Carolina (hereinafter "the officer"). In furtherance of that scheme, they delivered quantities of cash directly and through an intermediary to the officer on multiple occasions between December 2006 and the present.

22. On or about December 7, 2006, in Rutherford County, JEFFREY LEE CHILDERS met with the officer and another person whose identity is known to the Grand Jury ("the other person"). In order to operate video poker machines illegally in Rutherford County, CHILDERS delivered $1,380 in cash to the officer and promised more money in the future.

23. On or about December 19, 2006, in Rutherford County, JAMES HENDERSON and CHILDERS met with the officer and the other person and discussed their video poker machine operations in Rutherford County, asking for assurances that the officer would give them advance notice of any upcoming search warrants and for a promise that no competitors would be allowed to operate video poker machines in the county. They agreed to pay the officer a lump sum of $1,000 each month, but JAMES HENDERSON agreed to start off with an initial payment of $10,000. He handed the officer $4,000 in cash, promising he would send CHILDERS with the rest of the $10,000.

24. Later on December 19, 2006, in Rutherford County, CHILDERS delivered the remaining $6,000 in cash to the other person, for purposes of having the other person deliver the cash to the officer.

25. On or about June 4, 2007, at a HENDERSON AMUSEMENT, INC., office in Inman, South Carolina, JAMES HENDERSON and CHILDERS met with the officer and the previously-mentioned other person. At that time, JAMES HENDERSON handed the officer $2,000 in cash to obtain the officer's assistance in getting criminal charges against a HENDERSON employee's son

5

dropped or reduced. On or about June 13, 2007, CHILDERS delivered an additional $2,900 to the other person to be delivered to the officer for the same purpose.

## *Assistance by Other Law Enforcement Officers*

26. During the time period material to this Indictment, the HENDERSONS also obtained the assistance of several other law enforcement officers in order to facilitate their illegal gambling operation. For example, the HENDERSONS regularly paid money to GUY KENNETH PENLAND, who was a special captain in the Buncombe County Sheriff's Office. The HENDERSONS also reimbursed PENLAND for his personal gasoline charge card expenses. In exchange, PENLAND sometimes accompanied JERRY PENNINGTON on visits to various store owners within the Western District of North Carolina, to persuade them to place HENDERSON machines at their locations, or to remain with the HENDERSONS rather than switch to another video poker organization.

27. PENLAND also provided other forms of assistance. On or about May 16, 2005, PENLAND radioed into the Buncombe County Sheriff's Office dispatcher the license tag number of an FBI agent who had been surveilling a HENDERSON location in Cleveland County. When PENLAND learned that the tag came back as "not on file" (which is known to law enforcement officers as frequently being a designation for undercover law enforcement vehicles), he called a HENDERSON employee and warned him that the agent's car belonged to some type of undercover police officer.

28. The HENDERSONS also received assistance from RONNIE EUGENE DAVIS, also known as Butch Davis, who was a lieutenant with the Buncombe County Sheriff's Office. In or about January 2003, DAVIS and either BARRON HENDERSON or JAMES HENDERSON visited a laundromat on Highway 63 in Buncombe County for purposes of convincing the owner to place HENDERSON video poker machines in that location. DAVIS drove HENDERSON to that meeting in a Buncombe County Sheriff's Office vehicle. As a result of that meeting, the owner agreed to place and operate HENDERSON video poker machines at that location.

29. On or about September 5, 2005, in Cleveland County, JERRY PENNINGTON was arrested for possession of gambling paraphernalia. At that time, in an attempt to avoid arrest, he presented to the arresting officers an authentic Buncombe County Sheriff's Office lieutenant's badge.

## *Obstruction of Justice, Subornation of Perjury, and Witness Tampering*

30. In an effort to obstruct the Grand Jury's investigation of the HENDERSON organization and its operations, several of the HENDERSON employees knowingly testified falsely before the Grand Jury about material facts. Additionally, several of the defendants met or spoke with other Grand Jury witnesses to try to persuade them to commit perjury as well. Although many of these efforts were unsuccessful, some others were successful and the witnesses knowingly provided materially false testimony.

6

31. To assist them in their efforts, the HENDERSONS used HAROLD STEVE HARTNESS, a licensed private investigator. HARTNESS met with many potential witnesses in order to suggest to them ways in which they could either evade answering questions before the grand jury or to testify falsely. He also regularly met and attempted to meet with witnesses after their Grand Jury appearances in order to debrief them, so as to determine how the investigation was proceeding.

32. One such series of witness tampering meetings focused on an attempt by HARTNESS and others to have store owners testify falsely that the HENDERSONS had taken their split of the proceeds directly from the gross amount the machines had taken in, and to have the owners further testify falsely that all payouts they had made were from the owners' share. This apparently would support the notion that the HENDERSONS were ignorant of the fact that the machines were being used for gambling. HARTNESS also encouraged the store owners to testify that they had never called a HENDERSON employee to deliver cash for jackpot payouts, nor had any such cash deliveries occurred.

33. In his efforts to influence the store owners, HARTNESS sometimes was accompanied to these meetings by the HENDERSON checkup employee for that particular store. BARRON HENDERSON, MICHAEL RAY ELLIOTT, and MARTY MARVIN BABB set up most of these meetings. ELLIOTT and BARRON HENDERSON each accompanied HARTNESS to various such meetings.

34. Between on or about March 2, 2007, and March 13, 2007, in Haywood County, HARTNESS and ELLIOTT met with M.K., a person who had received a subpoena to testify before the Grand Jury. At that meeting, HARTNESS encouraged the witness to testify that the HENDERSONS and the witness had split the gross cash intake from the machines, and that all payouts had come from the witness's share of the gross. In fact, however, as HARTNESS and ELLIOTT knew, the parties had always split the net profits on these machines, with the illegal cash payouts therefore coming jointly from the HENDERSONS' share and the witness's share.

35. On or about March 3, 2007, in Caldwell County, HARTNESS met with R.T., an owner of several locations with HENDERSON machines. R.T. had called BARRON HENDERSON one day earlier to tell him that he had received a Grand Jury subpoena, and BARRON HENDERSON had told him that HENDERSON would send someone to talk to him. At that meeting, HARTNESS informed R.T. that he should testify that he and the HENDERSONS had split the gross intake rather than the net profit from the machines.

36. On or about March 4, 2007, in Transylvania County, ELLIOTT and HARTNESS met with the owners of a business that had HENDERSON machines, those owners having received subpoenas to testify before the Grand Jury. HARTNESS informed the owners that they should testify that no one from the HENDERSONS ever brought them money to pay jackpots, and that the owners had made all payouts from their own share of the machine income. HARTNESS instructed

7

the owners that they should testify that they and the HENDERSONS had split the gross intake rather than the net profits.

37. On or about March 10, 2007, in Cleveland County, BARRON HENDERSON told Y.S., who owned a business with HENDERSON machines and who had received a subpoena, that he would send someone to meet with Y.S. about the upcoming Grand Jury testimony.

38. After March 10, 2007, and before March 29, 2007, the exact date being unknown to the GRAND JURY, in Cleveland County, HARTNESS met with Y.S. and spoke with Y.S about testifying that Y.S. and the HENDERSONS had split the gross intake rather than the net profits from the machines. Y.S. informed HARTNESS that she would not testify that they had split the gross, because that was not true.

39. On or about March 14, 2007, in Haywood County, HARTNESS and ELLIOTT met with D.S. and R.S., store owners who had HENDERSON machines and who had received subpoenas to testify before the Grand Jury. At that meeting, HARTNESS encouraged the witnesses to testify, falsely, that the HENDERSONS and the witnesses had split the gross cash intake from the machines, and that all payouts had come from the witnesses' share of the gross.

40. On or about March 2, 2007, in Burke County, agents executed a federal search warrant at B & R Stone, which had HENDERSON machines. That business was owned by BILLY RAY BUCHANAN, and was operated by BUCHANAN, TERRI HOLTSCLAW, and ROBERT MERRYMAN, among others. BUCHANAN, HOLTSCLAW, and MERRYMAN received subpoenas to testify before the Grand Jury on March 29, 2007.

41. On or about March 6, 2007, in Burke County, HARTNESS and BARRON HENDERSON met with BUCHANAN, HOLTSCLAW, and MERRYMAN for purposes of discussing their upcoming Grand Jury testimony.

42. On or about March 29, 2007, HOLTSCLAW and MERRYMAN each falsely testified before the Grand Jury that the HENDERSONS and B & R Stone had split the gross cash intake, rather than the net profits, from the machines at B & R Stone.

43. On or about March 29, 2007, BUCHANAN falsely testified before the Grand Jury that he was unfamiliar with the financial arrangement between the HENDERSONS and B & R Stone, and that he had no operational responsibility for B & R Stone.

44. On May 16, 2007, the Grand Jury convened at the Federal Courthouse in Asheville to hear testimony from witnesses in its investigation of the HENDERSONS and their coconspirators. HARTNESS, ELLIOTT and STEPHEN positioned themselves that day in a vehicle parked directly across the street from the Courthouse, situated so as to provide a view of the only public entrance to the Courthouse. They observed Grand Jury witnesses as the witnesses arrived and departed from the Courthouse. They hailed at least two such witnesses over, thereby assuring that the witnesses

8

knew that the witnesses had been observed.  They asked the witnesses to describe to them what they had been asked in the Grand Jury and what answers they had given.

## COUNT ONE
## (CONSPIRACY TO CONDUCT AN ILLEGAL GAMBLING BUSINESS)

45.  Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

46.  From a date on or before October 1, 2000, the exact date being unknown to the Grand Jury, and continuously thereafter through the present, in Buncombe County, Burke County, Caldwell County, Catawba County, Cleveland County, Gaston County, Haywood County, Henderson County, Jackson County, Lincoln County, Macon County, Polk County, Rutherford County, Swain County and Transylvania County, within the Western District of North Carolina, and within the District of South Carolina and elsewhere, the defendants,

1) HENDERSON AMUSEMENT, INC.
2) JAMES OTIS HENDERSON,
also known as Jamie Henderson
3) BARRON SLOAN HENDERSON,
also known as Barry Henderson
4) JERRY PENNINGTON,
also known as J.P.
5) JEFFREY LEE CHILDERS
6) HAROLD STEVE HARTNESS
7) WILLIAM W. BROWN,
also known as Hack Brown
8) KATHY STEPHEN
9) MARTY MARVIN BABB
10) MICHAEL RAY ELLIOTT
11) RANDALL W. GILES
12) ROGER BEDENBAUGH
13) IMRAN ALAM
14) DENNIS CLARY,
also known as Hooper Clary
15) TIMOTHY SHANNON BUFF
16) GUY KENNETH PENLAND
17) RONNIE EUGENE DAVIS,
also known as Butch Davis
18) DEXTER WAYNE WINFIELD, JR.
19) BILLY RAY BUCHANAN
20) TERRI HOLTSCLAW

9

21) ROBERT MERRYMAN
and
22) PAMELA BUESSER,

knowingly and willfully combined, conspired, confederated and agreed with one another, and with other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, namely: to conduct, finance, manage, supervise and direct an illegal gambling business, said illegal gambling business involving the operation of video poker machines in violation of the laws of the State of North Carolina, in which state said business was conducted; which illegal gambling business involved, during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part thereof; and which gambling business remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in any single day, all in violation of Title 18, United States Code, Section 1955.

## Overt Acts

47. In furtherance of this conspiracy, and in order to effect the object thereof, the defendants did commit the overt acts, among others, as set forth in Paragraphs 5 through 44 above.

## Object of the Conspiracy

48. It was the object of the conspiracy that the co-conspirators would obtain cash through the illegal operation of the video poker machines for gambling purposes.

All in violation of Title 18, United States Code, Section 371.


## **COUNT TWO (ILLEGAL GAMBLING BUSINESS)**

49. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

50. From a date on or before October 1, 2000, the exact date being unknown to the Grand Jury, and continuously thereafter through the present, in Buncombe County, Burke County, Caldwell County, Catawba County, Cleveland County, Gaston County, Haywood County, Henderson County, Jackson County, Lincoln County, Macon County, Polk County, Rutherford County, Swain County and Transylvania County, within the Western District of North Carolina, and within the District of South Carolina and elsewhere, the defendants,

1) HENDERSON AMUSEMENT, INC.
2) JAMES OTIS HENDERSON,

10

also known as Jamie Henderson
3) BARRON SLOAN HENDERSON,
also known as Barry Henderson
4) JERRY PENNINGTON,
also known as J.P.
5) JEFFREY LEE CHILDERS
7) WILLIAM W. BROWN,
also known as Hack Brown
8) KATHY STEPHEN
9) MARTY MARVIN BABB
10) MICHAEL RAY ELLIOTT
11) RANDALL W. GILES
12) ROGER BEDENBAUGH
13) IMRAN ALAM
14) DENNIS CLARY,
also known as Hooper Clary
15) TIMOTHY SHANNON BUFF
16) GUY KENNETH PENLAND
17) RONNIE EUGENE DAVIS,
also known as Butch Davis
18) DEXTER WAYNE WINFIELD, JR.
19) BILLY RAY BUCHANAN
20) TERRI HOLTSCLAW
21) ROBERT MERRYMAN
and
22) PAMELA BUESSER,

did knowingly and willfully conduct, finance, manage, supervise and direct an illegal gambling business, said illegal gambling business involving the operation of video poker machines in violation of the laws of the State of North Carolina, in which state said business was conducted; which illegal gambling business involved, during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part thereof; and which gambling business remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in any single day, and did aid and abet one another in the commission of such a violation.

All in violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT THREE (CONSPIRACY TO COMMIT BRIBERY)

51. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

52. Rutherford County, North Carolina was and is a governmental subdivision of the State of North Carolina. Rutherford County and the State of North Carolina each received federal assistance in excess of $10,000 within a period of one year of December 7, 2006, December 19, 2006, June 4, 2007, and June 13, 2007.

53. By December 7, 2006, and continuing through the present, a person whose identity is known to the Grand Jury was a law enforcement officer employed by the Rutherford County Sheriff's Office, and thus was an agent of Rutherford County and of the State of North Carolina.

54. From a date on or before December 7, 2006, the exact date being unknown to the Grand Jury, and continuing through the present, in Rutherford County, within the Western District of North Carolina, and elsewhere, the defendants,

2) JAMES OTIS HENDERSON,
also known as Jamie Henderson
and
5) JEFFREY LEE CHILDERS,

knowingly and willfully combined, conspired, confederated and agreed with one another, and with other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, namely: to knowingly and corruptly give, offer, and agree to give something of value to the law enforcement officer employed by the Rutherford County Sheriff's Office, who was an agent of the State of North Carolina and of Rutherford County, with the intent to influence or reward that agent in connection with the business, transaction, and series of transactions of Rutherford County, the Rutherford County Sheriff's Office, and the State of North Carolina, involving something of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(2).

Overt Acts

55. In furtherance of the conspiracy, the defendants did commit, among others, the overt acts set forth in Paragraphs 21 through 25 of this Indictment.

Object of the Conspiracy

56. It was the object of the conspiracy that the defendants and other persons, known and unknown to the Grand Jury, would be able to conduct illegal video poker machine operations within Rutherford County and that law enforcement efforts against them would be eliminated or impeded.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR (BRIBERY)

57. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

58. Rutherford County, North Carolina, was and is a governmental subdivision of the State of North Carolina. Rutherford County and State of North Carolina each received federal assistance in excess of $10,000 within a period of one year of December 19, 2006.

59. On or about December 19, 2006, in Rutherford County, within the Western District of North Carolina, the defendants,

2) JAMES OTIS HENDERSON,
also known as Jamie Henderson,
and
5) JEFFREY LEE CHILDERS,

did knowingly and corruptly give, offer, and agree to give something of value to a law enforcement officer employed by the Rutherford County Sheriff's Office, an agent of Rutherford County and of the State of North Carolina, with the intent to influence or reward the law enforcement officer in connection with the business, transaction, and series of transactions of Rutherford County, the Rutherford County Sheriff's Office, and the State of North Carolina, involving something of value of $5,000 or more, and did aid and abet one another in the commission of such violation.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT FIVE (CONSPIRACY TO COMMIT WITNESS TAMPERING)

60. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

61. From a date on or before March 2, 2007, the exact date being unknown to the Grand Jury, and continuing through at least March 29, 2007, in Buncombe County, Burke County, Caldwell County, Cleveland County, Haywood County, and Transylvania County, within the Western District of North Carolina, and elsewhere, the defendants,

3) BARRON SLOAN HENDERSON,
also known as Barry Henderson,
6) HAROLD STEVE HARTNESS,
9) MARTY MARVIN BABB
and
10) MICHAEL RAY ELLIOTT,

13

knowingly and willfully combined, conspired, confederated and agreed with one another, and with other persons known and unknown to the Grand Jury, to commit certain offenses, namely: to corruptly attempt to persuade another person, and to knowingly engage in misleading conduct toward another person, with intent to influence the testimony of that person in an official proceeding, that is a session of the Grand Jury of the United States District Court for the Western District of North Carolina.

All in violation of Title 18, United States Code, Section 1512(k).

## COUNT SIX (WITNESS TAMPERING)

62. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

63. On or about March 3, 2007, in Caldwell County, within the Western District of North Carolina, and elsewhere, the defendant,

### 6) HAROLD STEVE HARTNESS,

did corruptly attempt to persuade another person, and did knowingly engage in misleading conduct toward another person, with intent to influence the testimony of that person in an official proceeding, that is a session of the Grand Jury of the United States District Court for the Western District of North Carolina.

All in violation of Title 18, United States Code, Section 1512(b)(1).

## COUNT SEVEN (WITNESS TAMPERING)

64. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

65. On or about March 4, 2007, in Transylvania County, within the Western District of North Carolina, and elsewhere, the defendants,

### 6) HAROLD STEVE HARTNESS
and
### 10) MICHAEL RAY ELLIOTT,

did corruptly attempt to persuade another person, and did knowingly engage in misleading conduct toward another person, with intent to influence the testimony of that person in an official proceeding,

14

that is a session of the Grand Jury of the United States District Court for the Western District of North Carolina, and did aid and abet one another in the commission of such violation.

All in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT EIGHT (WITNESS TAMPERING)

66. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

67. On or about March 14, 2007, in Haywood County, within the Western District of North Carolina, and elsewhere, the defendants,

6) HAROLD STEVE HARTNESS
and
10) MICHAEL RAY ELLIOTT,

did corruptly attempt to persuade another person, and did knowingly engage in misleading conduct toward another person, with intent to influence the testimony of that person in an official proceeding, that is a session of the Grand Jury of the United States District Court for the Western District of North Carolina, and did aid and abet one another in the commission of such violation.

All in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT NINE (WITNESS TAMPERING)

68. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

69. Between March 10 and March 29, 2007, the exact date being unknown to the Grand Jury, in Cleveland County, within the Western District of North Carolina, and elsewhere, the defendants,

3) BARRON SLOAN HENDERSON,
also known as Barry Henderson
and
6) HAROLD STEVE HARTNESS,

did corruptly attempt to persuade another person, and did knowingly engage in misleading conduct toward another person, with intent to influence the testimony of that person in an official proceeding,

15

that is a session of the Grand Jury of the United States District Court for the Western District of North Carolina, and did aid and abet one another in the commission of such violation.

All in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT TEN (CONSPIRACY TO OBSTRUCT JUSTICE)

70. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

71. From a date on or before April 3, 2006, the exact date being unknown to the Grand Jury, and continuing through the present, in Buncombe County, Transylvania County, Haywood County, Cleveland County, Caldwell County, and Burke County within the Western District of North Carolina, and elsewhere, the defendants,

> 3) BARRON SLOAN HENDERSON,
> also known as Barry Henderson
> 6) HAROLD STEVE HARTNESS
> 7) WILLIAM W. BROWN,
> also known as Hack Brown
> 8) KATHY STEPHEN
> 9) MARTY MARVIN BABB
> 10) MICHAEL RAY ELLIOTT
> 11) RANDALL W. GILES
> 15) TIMOTHY SHANNON BUFF
> 19) BILLY RAY BUCHANAN
> 20) TERRI HOLTSCLAW
> and
> 21) ROBERT MERRYMAN,

knowingly and willfully combined, conspired, confederated and agreed with one another, and with other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, namely: to corruptly influence, obstruct, and impede, and to corruptly endeavor to influence, obstruct, and impede, the due administration of justice by the Grand Jury of the United States District Court for the Western District of North Carolina, in violation of Title 18, United States Code, Section 1503.

16

## Overt Acts

72. In furtherance of the conspiracy, the defendants did commit, among others, the overt acts set forth in Paragraphs 31 through 44 of this Indictment, and the acts set forth in Counts Eleven through Seventeen of this Indictment.

## Object of the Conspiracy

73. It was the object of the conspiracy to influence, obstruct and impede the Grand Jury investigation, and to endeavor to do the same, by means of presenting false and perjurious testimony before the Grand Jury, and by persuading and endeavoring to persuade others to present false and perjurious testimony before the Grand Jury, in violation of Title 18, United States Code, Section 1503.

All in violation of Title 18, United States Code, Section 371.

## **COUNT ELEVEN (GRAND JURY PERJURY)**

74. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

75. On or about April 3, 2006, in Buncombe County, within the Western District of North Carolina, the defendant,

### 8) KATHY STEPHEN,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

76. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and her co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to her knowledge, as a result of the use of those machines for gambling purposes.

77. At the time and place alleged, the defendant, KATHY STEPHEN, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning her role as an employee of HENDERSON AMUSEMENT in

17

performing checkups on the video poker machines in operation at various locations within the Western District of North Carolina, her knowledge as to whether these machines were being used for illegal gambling activity, and her delivery of cash for purposes of making payouts to persons who had won jackpots on such machines:

Q. Are you familiar with who has the responsibility for making the payments if a jackpot is hit?
A. *No.*
Q. Are you familiar with payments being made for jackpots being hit?
A. *No.*
Q. So as you testify here today, are you aware of any cash payments being made to any people who have won on the video poker machines?
A. *No.*
Q. You have no knowledge of that?
A. *No.*
Q. So if I were to ask how many jackpots you have paid the answer would be zero; is that correct?
A. *Correct.*

\* \* \*

Q. To your knowledge, there have been no payouts of cash made under the Henderson machines; is that your testimony?
A. *To my knowledge, yes.*
Q. You have never delivered cash to any location for purposes of a payout?
A. *No.*
Q. Have you ever seen or heard of cash being delivered to any location for purposes of a payout?
A. *No.*

78. The aforesaid italicized testimony of KATHY STEPHEN, as she then and there well knew and believed, was false, in that the defendant was aware of cash payouts having been made on these video poker machines and was aware that she personally had delivered cash for purposes of jackpot payouts.

All in violation of Title 18, United States Code, Section 1623.

18

## COUNT TWELVE (GRAND JURY PERJURY)

79.  Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

80.  On or about April 3, 2006, in Buncombe County, within the Western District of North Carolina, the defendant,

7) WILLIAM W. BROWN,
also known as Hack Brown,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

81.  At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and his co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

82.  At the time and place alleged, the defendant, WILLIAM W. BROWN, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning his role, as an employee of HENDERSON AMUSEMENT, in performing checkups on the video poker machines in operation at various locations within the Western District of North Carolina, his knowledge as to whether these machines were being used for illegal gambling activity, and his delivery of cash for purposes of making payouts to persons who had won on such machines:

> Q.  Do you know if any of the Hendersons' machines have ever resulted in jackpots or cash payments being paid out?
> A.  *Not to my knowledge.*
> Q.  We'll get specific then I'll get broader. You personally, as you're sitting here today, have never personally delivered cash for purposes of a payout of a winning video or poker machine; is that correct?
> A.  *That is correct.*
> Q.  And you personally have never witnessed anybody delivering cash to a store owner or somebody else for purposes of making a payout; is that correct?
> A.  *That is correct. I have not.*

19

Q. As you sit here today, have you ever heard of anybody on behalf of the Hendersons delivering cash purses of a payout for somebody who has won on a video poker machine?

A. *No, sir.*


83. The aforesaid italicized testimony of WILLIAM W. BROWN, as he then and there well knew and believed, was false, in that the defendant was aware of cash payouts having been made on the HENDERSON video poker machines; was aware that he personally and other HENDERSON employees had delivered cash for purposes of payouts

All in violation of Title 18, United States Code, Section 1623.


## COUNT THIRTEEN (GRAND JURY PERJURY)

84. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

85. On or about August 9, 2006, in Buncombe County, within the Western District of North Carolina, the defendant,

### 11) RANDALL W. GILES,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

86. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and his co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

87. At the time and place alleged, the defendant, RANDALL W. GILES, appearing as a witness under oath at a proceeding before the Grand Jury, was questioned concerning a HENDERSON AMUSEMENT checkup ticket which acknowledged he had prepared. The ticket showed that the machines at the store being checked had taken in a gross amount of $9,070 and had a total figure of "cash out" of $6,811, for a total profit of $2,259 which was then split between the store owner and the HENDERSONS. GILES knowingly made the following declarations:

20

| | |
|---|---|
| Q. | Now, the $6,811 that went out --- |
| A. | Yes, sir. |
| Q. | — that was $6,811 real dollars that went out; wasn't it? |
| A. | *I'm not sure where the money goes.* |
| Q. | Well, when you say you're not sure where the money goes — |
| A. | Well, I mean, I go by what the screen says. |
| Q. | Yes, sir. |
| A. | If the screen says it took in this, this was gone and that's the total profit is $2,259, that's what we split |
| Q. | Right. So obviously the Hendersons – you're not expecting to get 40 percent of $9,070? |
| A. | No, sir. |
| Q. | There's been some expenses associated with some kind of thing going out with these machines; right? |
| A. | *If there is, I don't know about it.* I was told to go by the screen readings. |
| Q. | Well, you have to know there's something. I mean, there's $9,070. You're not doing 40 percent of $9,070. You're doing 40 percent of $2,259; right? |
| A. | I'm going by the screen readings. |
| Q. | Right. What do you think the $6,811 that's called total out represents? |
| A. | *I'm not sure.* |
| Q. | You did this for a year; right? |
| A. | Right at it, yes sir. |
| Q. | And your natural human curiosity never got you to wonder, "Well, what is the $6,811 that it shows going out?" You never asked that? |
| A. | *No, sir. No.* |
| Q. | You have no idea what it is? |
| A. | *No, sir.* |

* * *

| | |
|---|---|
| Q. | With regard to the payouts, did anybody ever tell you that any of the Hendersons' machines were being used to make cash payouts? |
| A. | *No, sir.* |
| Q. | As you're sitting here today, do you have any idea whether cash payouts are being done or not at any of these machines? |
| A. | *No, sir.* |
| Q. | You never asked about it? |
| A. | *No, sir.* |

Q.    You never asked anything to the extent of, "What's the justification for making these drastic drops between the gross and the net?" You never asked anything about that?

A.    *No, sir.*

88. The aforesaid italicized testimony of RANDALL W. GILES, as he then and there well knew and believed, was false, in that the defendant was aware of cash payouts having been made on HENDERSON video poker machines and was aware that the "cash out" figure on the checkup tickets he prepared from reading the video poker machines actually represented cash that had been paid out.

All in violation of Title 18, United States Code, Section 1623.

## COUNT FOURTEEN (GRAND JURY PERJURY)

89. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

90. On or about August 9, 2006, in Buncombe County, within the Western District of North Carolina, the defendant,

### 9) MARTY MARVIN BABB,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

91. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and his co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

92. At the time and place alleged, the defendant, MARTY MARVIN BABB, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning his role, as an employee of HENDERSON AMUSEMENT, in performing checkups on the video poker machines in operation at various locations within the Western District of North Carolina and his knowledge as to whether these machines were being used for illegal gambling activity:

22

Q. Are you familiar, sitting here under oath today, with the fact that, at least with some of these stores, the owners are making cash payouts?

A. *I don't know.*

\* \* \*

Q. As you're sitting here today, are you aware of any of the stores that you go to making cash payouts from the Henderson machines?

A. *No, sir.*

Q. You have no knowledge of any cash payouts?

A. *No, sir.*

93. Later during that same Grand Jury testimony on August 9, 2006, MARTY MARVIN BABB was questioned concerning a HENDERSON AMUSEMENT checkup ticket, which had been prepared by RANDALL W. GILES, but was used as an example of the types of checkup tickets BABB completed. The ticket showed that the machines at the store being checked had taken in a gross amount of $9,070 and had a total figure of "cash out" of $6,811, for a total profit of $2,259 which was then split between the store owner and the HENDERSONS. When questioned about this, BABB testified falsely, as follows:

Q. In this example, do you think the $6,811 that went out, is that merchandise and credits, or is that cash that went out?

A. *Merchandise and credits, I guess.*

\* \* \*

Q. So the $6,811 in this case is derived purely from what the machine, through its tracking, is keeping track of, right?

A. Right.

Q. Okay, but your testimony is you've got no reason to think that the $6,811 is anything other than $10 payments that are out; right?

A. *Right.*

\* \* \*

Q. So you're sitting here and telling us that, coincidentally, then, there's been exactly the same amount in merchandise payments as what the machine shows?

A. *Right.*

Q. And that always happens, right?

A. *Right.*

23

Q.	Because if it didn't always happen, there would be a difference
	between the machine's showing and what the 50 percent, 40 percent,
	whatever share is that you need to return; right?
A.	Right.
Q.	So you're telling us that every store that you go to, it always works
	out that the amount of total out is always exactly what the machine is
	going to show, but the total out is actually gift certificates, trinkets,
	and stuff?
A.	*Right. I have nothing to do with the out.*

94.  The aforesaid italicized testimony of MARTY MARVIN BABB, as he then and there
well knew and believed, was false, in that the defendant was aware of cash payouts having been
made on HENDERSON video poker machines; was aware that he personally had delivered cash for
purposes of payouts; was aware that the "cash out" figure on the checkup tickets he and other
HENDERSON employees prepared from reading the video poker machines actually represented cash
that had been paid out; and was aware that the amount of "cash out" shown on every machine at
every store that he went to was not, coincidentally, the exact amount of merchandise and gift
certificates that had been awarded for every machine at every store

All in violation of Title 18, United States Code, Section 1623.


## COUNT FIFTEEN (GRAND JURY PERJURY)

95.  Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by
reference.

96.  On or about March 29, 2007, in Buncombe County, within the Western District of North
Carolina, the defendant,

### 21) ROBERT MERRYMAN,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in
the Western District of North Carolina, did knowingly make a false material declaration, to wit:

97.  At the time and place aforesaid, the Grand Jury was conducting an investigation to
determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal
gambling business) and 1956 (money laundering), among others, had been committed, and to
identify the persons who had committed, caused the commission of, and conspired to commit such
violations. It was material to the said investigation that the Grand Jury ascertain whether the video
poker machines maintained and operated by the defendant and his co-conspirators, as set forth in
Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any

24

cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

98. At the time and place alleged, the defendant, ROBERT MERRYMAN, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning the operation of those afore-mentioned video poker machines at a business known as B & R Stone in Burke County, North Carolina, and the division of profits from those machines:

Q. Now, you mentioned – even before I raised it, you mentioned a couple of minutes ago that it was the gross. Tell us what you mean by that.

A. *Their deal was for 50 percent of the gross, is what Henderson got.*

Q. And just so there's no confusion on terms, what do you mean when you say gross?

A. The total intake.

Q. Okay. So, for example, if you have somebody who played $1,000 in that machine, then that would be the gross, regardless of whether anybody got paid out or not?

A. Right.

Q. Okay. Are you familiar with what the split – percentage-wise, the split was between the Hendersons and B & R Stone?

A. *Fifty percent of the gross.*

\* \* \*

Q. So just to wrap up then, I just want to be sure. So, your testimony is that the 50-50 split was always done off the gross, the amount of cash in; is that correct?

A. *Yes, sir.*

Q. That the – any payouts at all were entirely out of the 50 percent that B & R Stone got?

A. *Right.*

99. The aforesaid italicized testimony of ROBERT MERRYMAN, as he then and there well knew and believed, was false, in that, as the defendant knew, the division of the income from the video poker machines between B & R Stone and the HENDERSONS was fifty percent each from the net income, or profit, rather than fifty percent each from gross amount of cash in. Such a distinction as to whether it was the gross or the net was material to the grand jury's investigation, since it related to the knowledge of the HENDERSONS and the employees of HENDERSON

25

AMUSEMENT that large amounts of cash were being paid out on these machines, which accounted for the difference between the gross and net figures.

All in violation of Title 18, United States Code, Section 1623.

## COUNT SIXTEEN (GRAND JURY PERJURY)

100. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

101. On or about March 29, 2007, in Buncombe County, within the Western District of North Carolina, the defendant,

### 19) BILLY RAY BUCHANAN,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

102. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and his co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

103. At the time and place alleged, the defendant, BILLY RAY BUCHANAN, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning the operation of those afore-mentioned video poker machines at a business known as B & R Stone in Burke County, North Carolina, and concerning his interview with law enforcement agents that took place on or about March 2, 2007:

Q. In addition to your pipe-fitter job, do you have any relationship to something – an enterprise called B & R Stone?
A. *Nothing; only my name on it.*

* * *

Q. You don't know whether you're getting money from B & R Stone?
A. *Huh-uh.*

26

Q. So only Terri would know whether there's any profit being turned, for example, from B & R Stone?

A. *Yes.*

\* \* \*

Q. At that time, the date of the search warrant, what did you tell them [law enforcement agents] with regard to how the business was run?

A. *I told them I didn't know.*

Q. At that time that first day, did you tell them that it would start with $1,000 at the beginning of the day?

A. *No, sir.*

Q. Did you talk to them about any cashout ticket up to $1,000 could be covered in the store?

A. *No.*

104. The aforesaid italicized testimony of BILLY RAY BUCHANAN, as he then and there well knew and believed, was false, in that, as the defendant knew, he did have an operational relationship with the video poker business at B & R Stone, he was familiar with how that business was run, and he did tell the law enforcement agents, on or about March 2, 2007, that each day at B & R Stone would start off with $1,000 in a bag for purposes of making cash payouts up to that amount.

All in violation of Title 18, United States Code, Section 1623.

## COUNT SEVENTEEN (GRAND JURY PERJURY)

105. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

106. On or about May 16, 2007, in Buncombe County, within the Western District of North Carolina, the defendant,

15) TIMOTHY SHANNON BUFF,

while under oath and testifying in a proceeding before a Grand Jury of the United States sitting in the Western District of North Carolina, did knowingly make a false material declaration, to wit:

107. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1955 (operation of an illegal gambling business) and 1956 (money laundering), among others, had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such

27

violations. It was material to the said investigation that the Grand Jury ascertain whether the video poker machines maintained and operated by the defendant and his co-conspirators, as set forth in Count One of this Bill of Indictment, had been used for illegal gambling purposes, and whether any cash payouts had been made by the defendant or others, to his knowledge, as a result of the use of those machines for gambling purposes.

108. At the time and place alleged, the defendant, TIMOTHY SHANNON BUFF, appearing as a witness under oath at a proceeding before the Grand Jury, knowingly made the following declarations in response to questions concerning the operation of those afore-mentioned video poker machines at a bar owned by him in Columbus, North Carolina:

Q. Were you ever there when whoever it was from the Hendersons would come by to do the checkups?
A. *No.*
Q. Do you have any idea, then, how they would do it?
A. *No. I have no idea. They just – like I said, they would just come by once a month or once every two months and might leave me $100 or $80 or something like that.*

            \*   \*   \*

Q. Just so I'm clear on this, though, to the best of your knowledge, there was never any payouts there other than maybe the one that led to that raid back by the Columbus Police Department; is that correct?
A. *To my knowledge there, there wasn't. That's why I didn't make any money, I reckon.*
Q. Did you personally have anything to do with making payouts on the cash?
A. *No.*
Q. Were there ever any occasions when, to the best of your knowledge, you or anybody who worked for you ever had to call the Hendersons to have to have cash delivered?
A. *No, sir.*

            \*   \*   \*

Q. Did you ever make cash payouts to anybody on the machines?
A. *No.*

109. The aforesaid italicized testimony of TIMOTHY SHANNON BUFF, as he then and there well knew and believed, was false, in that the defendant was aware of who from the Hendersons did checkups at his location, was aware that he received significantly more than *"$100 or $80"* every month or two from the operation of these machines, was aware that his employees had

made cash payouts to persons who had won on these machines, and was aware that he himself had made such cash payouts

All in violation of Title 18, United States Code, Section 1623.

## COUNT EIGHTEEN (CONSPIRACY TO COMMIT MONEY LAUNDERING)

110. Paragraphs 1 through 44 of this Indictment are realleged and incorporated herein by reference.

111. Beginning on or about October 1, 2000, and continuing through the present, in Buncombe County, Burke County, Caldwell County, Catawba County, Cleveland County, Gaston County, Haywood County, Henderson County, Jackson County, Lincoln County, Macon County, Polk County, Rutherford County, Swain County and Transylvania County, within the Western District of North Carolina, and within the District of South Carolina and elsewhere, the defendants,

1) HENDERSON AMUSEMENT, INC.
2) JAMES OTIS HENDERSON,
also known as Jamie Henderson
3) BARRON SLOAN HENDERSON,
also known as Barry Henderson
4) JERRY PENNINGTON,
also known as J.P.
5) JEFFREY LEE CHILDERS
7) WILLIAM W. BROWN,
also known as Hack Brown
8) KATHY STEPHEN
9) MARTY MARVIN BABB
10) MICHAEL RAY ELLIOTT
11) RANDALL W. GILES
12) ROGER BEDENBAUGH
13) IMRAN ALAM
14) DENNIS CLARY,
also known as Hooper Clary
15) TIMOTHY SHANNON BUFF
18) DEXTER WAYNE WINFIELD, JR.

did combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, as follows:

a) knowingly to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, involving proceeds of a specified unlawful activity, that is, an illegal

29

gambling business, with the intent to promote the carrying on of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(a)(i); and

b) knowingly to engage, attempt to engage, in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, an illegal gambling business, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

112. Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under §2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981, 18 U.S.C. § 1955, and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(c). The defendants

1) HENDERSON AMUSEMENT, INC.
2) JAMES OTIS HENDERSON,
also known as Jamie Henderson
3) BARRON SLOAN HENDERSON,
also known as Barry Henderson
5) JEFFREY LEE CHILDERS
and
17) RONNIE EUGENE DAVIS,
also known as Butch Davis,

have or had a possessory or legal interest in the following property that is subject to forfeiture in accordance with § 982 and/or § 2461(c):

(a) all property involved in the violations alleged in this bill of indictment;

(b) all property which is proceeds of such violations; and,

(c) in the event that any property described in (a) or (b) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described in (a) and (b).

30

113. The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

(1) All currency and monetary instruments which were received during, involved in or used or intended to be used to facilitate the crimes alleged in this bill of indictment, including but not limited to the following:

    a) the sum of approximately $5,688,807 in proceeds;

    b) the sum of approximately $165,000 in United States Currency, seized on or about May 17, 2005, at the HENDERSON AMUSEMENT, INC. facility at 134 Banks Road, Kings Mountain, North Carolina.

    c) the sum of approximately $22,380 in bribe money, delivered by JAMES HENDERSON and JEFFREY LEE CHILDERS and intended for a Rutherford County Sheriff's Office law enforcement agent between December 7, 2006, and June 13, 2007;

    d) the sum of approximately $18,000 in United States Currency seized on or about February 22, 2007, at the residence of RONNIE EUGENE DAVIS, 131 Murray DeBruhl Road, Alexander, North Carolina.

(2) All title and interest in the following real property, in that such property was involved in the aforestated offenses or is traceable to such property:

    a) Property located at 2201 Cherryville Road, Waco, North Carolina, and found in Cleveland County Deed Book 1293, Page 1206.

    b) Property located at 134 Banks Road, Kings Mountain, North Carolina, and found in Cleveland County Deed Book 1308, Page 2312.

    c) Property located at 918 Long Branch Road, Grover, North Carolina, and found in Cleveland County Deed Book 1340, Page 1007.

    d) Property located on South Main Street, Rutherfordton, North Carolina, and found in Rutherford County Deed Book 805, Page 494.

    e) Property described as Unit 709, Brighton Kingston Plantation, in Horry County, South Carolina, and found in Horry County Deed Book 2739, Page 293.

    f) Property located at 166 Shadow Lane, in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 75G, Page 470.

g) Property described as 18.79 acres at 700 Sloan Road, Lyman, in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 79X, Page 276.

h) Property described as 211 Shadow Lane, Lyman, in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 85B, Page 815.

i) Property described as 5.13 acres in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 87E, Page 785.

j) Property described as 24.08 acres in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 75N, Page 517.

k) Property described as 100 Malibu Drive, Spartanburg, South Carolina, and found in Spartanburg County Deed Book 75C, Page 739.

l) Property described as One Lot, U.S. Highway 29 near Fairforest in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 81A, Page 42.

m) Property described as Tracts 35 & 36, One Seventy-Six Subdivision, Section IV, near Inman in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 81A, Page 50.

n) Property described as One Lot at the Intersection of Powell Mill Road and U.S. Highway 29 in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 81A, Page 54.

o) Property described as 7.58 acres, Lot No. 6 of Pearl Brown Estate (Highway 357) in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 81Z, Page 886.

p) Property described as 12.61 acres, Tract C on plat for Flossie P. Smith (Sloan Road) in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 83B, Page 198.

q) Property described as Tract 34, One Seventy-Six Subdivision, Section IV, near Inman in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 83P, Page 007.

r) Property described as .59 acres, Lot 9 in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 83T, Page 871.

32

s) Property described as Lots 23 & 24, Laurel Hills Subdivision, Inman, in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 84P, Page 348.

t) Property described as Tract 40, One Seventy-Six Subdivision, Section IV, near Inman in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 88T, Page 959.

u) Property described as 16.52 acres on a plat entitled "D.A. Burdett," in Spartanburg County, South Carolina, and found in Spartanburg County Deed Book 88U, Page 897.

A TRUE BILL

GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY


RICHARD LEE EDWARDS
ASSISTANT UNITED STATES ATTORNEY